IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL WAYNE SHAVER,

             Plaintiff,

vs.                              Case No. 13-1256-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

             Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 16, 2012, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 413-425).[1] Plaintiff alleges that he had been disabled since March 16, 2002 (R. at 69). In a

---

[1] This case has a long history. The 1st ALJ decision, dated October 21, 2004, was reversed and remanded by the U.S. District Court on September 20, 2006 (R. at 448-475). A 2nd ALJ decision, dated July 25, 2008, was reversed by the Appeals Council on October 12, 2010 (R. at 5A).

separate decision, plaintiff was found to be disabled as of July 26, 2008.  Therefore, this decision by the ALJ only addresses the time from plaintiff's alleged onset date of March 16, 2002 through July 25, 2008 (R. at 413).

Plaintiff meets the insured status requirements for disability insurance benefits through December 31, 2007 (R. at 415).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity for the time period in question (R. at 416).  At step two, the ALJ found that plaintiff had the following severe impairments:  fibromyalgia, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, adjustment disorder with depressed and anxious mood, and a history of alcohol and cocaine abuse (R. at 416).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 416).  After determining plaintiff's RFC (R. at 418), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 424).  At step five, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy (R. at 424-425).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 425).

**III.  Did the ALJ err in his evaluation of the medical opinion evidence?**

The court would note that plaintiff is proceeding pro se.
A pro se litigant's materials are entitled to a liberal reading,
and consequently, the court will make some allowances for the
pro se litigant's failure to cite proper legal authority, their
confusion of various legal theories, their poor syntax and
sentence construction, or their unfamiliarity with pleading
requirements, but the court cannot take on the responsibility of
serving as the litigant's attorney in constructing arguments and
searching the record.  Weaver. v. Astrue, 353 Fed. Appx. 151,
154 (10th Cir. Nov. 18, 2009).  Plaintiff's brief focuses on the
medical opinion evidence, and the relative weight the ALJ
accorded to that evidence in making his RFC findings.[2]

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight than the views of consulting
physicians or those who only review the medical records and
never examine the claimant.  The opinion of an examining
physician is generally entitled to less weight than that of a
treating physician, and the opinion of an agency physician who
has never seen the claimant is entitled to the least weight of
all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).
When a treating source opinion is inconsistent with the other

---

[2] Plaintiff's brief also includes a two page statement of objections to the ALJ decision of July 25, 2008 (Doc. 16 at
5-6).  However, that decision was reversed and remanded by the Appeals Council on October 12, 2010 (R. at 508-
509).  Those objections have no relevance to the ALJ decision of March 16, 2012.

medical evidence, the ALJ's task is to examine the other medical
source's reports to see if they outweigh the treating source's
reports, not the other way around.  Treating source opinions are
given particular weight because of their unique perspective to
the medical evidence that cannot be obtained from the objective
medical findings alone or from reports of individual
examinations, such as consultative examinations.  If an ALJ
intends to rely on a nontreating physician or examiner's
opinion, he must explain the weight he is giving to it.  Hamlin
v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must
provide a legally sufficient explanation for rejecting the
opinion of treating medical sources in favor of non-examining or
consulting medical sources.  Robinson, 366 F.3d at 1084.

    A treating physician's opinion about the nature and
severity of the claimant's impairments should be given
controlling weight by the Commissioner if well supported by
clinical and laboratory diagnostic techniques and if it is not
inconsistent with other substantial evidence in the record.
Castellano v. Secretary of Health & Human Services, 26 F.3d
1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2).  When a treating physician opinion is not given
controlling weight, the ALJ must nonetheless specify what lesser
weight he assigned the treating physician opinion.  Robinson v.
Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating

source opinion not entitled to controlling weight is still

entitled to deference and must be weighed using all of the

following factors:

(1) the length of the treatment relationship and the frequency
of examination;
(2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or
testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area
upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

    After considering the above factors, the ALJ must give good

reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely,

he/she must then give specific, legitimate reasons for doing so.

Watkins, 350 F.3d at 1301.

    The ALJ found that plaintiff could perform medium work, and

could lift or carry 25 pounds occasionally or 10 pounds

frequently.  Plaintiff could stand for 2 hours and sit for 6

hours in an 8 hour workday, with the option to alternate

position every 20-30 minutes.  Plaintiff is able to occasionally

bend, stoop, squat, or crouch, but should not crawl or climb

ladders, ropes or scaffolds.  He should avoid exposure to

unprotected heights and concentrated exposure to dust, fumes and

pollutants.  Plaintiff can perform simple, routine jobs that do
not require close co-worker contact or interaction with the
public (R. at 418).

In making his physical RFC findings, the ALJ gave
considerable weight to the opinions of Dr. Winkler, who reviewed
the patient's records and testified at the hearing on January
30, 2012 (R. at 1046-1066).  The ALJ found that Dr. Winkler's
opinions were supported by her detailed review of the medical
evidence and noted that Dr. Winkler had the advantage of a more
complete record than the other opinion sources (R. at 422).  Dr.
Winkler discussed why he discounted the opinions of Dr. Mehta, a
treating physician.  Dr. Winkler noted that Dr. Mehta indicated
that he did not have an MRI to see the extent of the back pain
(R. at 1066).  The ALJ gave this as a reason for discounting the
opinions of Dr. Mehta (R. at 421).

The ALJ gave little weight to the opinions of Dr. Mehta,
limited weight to Dr. Coleman's state agency assessment, more
weight to the opinions of Dr. Parsons's state agency assessment,
and some weight to the opinions of Dr. Stockwell's state agency
assessment (R. at 421).

The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.  Hackett v. Barnhart, 395
F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will

not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ gave specific, legitimate reasons for the relative weight assigned to the various medical opinions regarding plaintiff's physical limitations.  The ALJ could reasonably give greater weight to the opinions of Dr. Winkler in light of her detailed testimony and her unique opportunity of reviewing a more complete medical record than the other opinion sources.  The court will not reweigh the evidence.  The court finds that substantial evidence supports the ALJ's physical RFC findings.

The ALJ made mental RFC findings which closely correspond to the opinions of Dr. Witt, who completed a mental RFC assessment on September 8, 2005 (R. at 883-887, 898-910).  Dr. Witt provided a narrative discussion of the evidence and the

basis for his findings (R. at 885, 910).  Dr. Witt also consulted with Ms. Miller, plaintiff's therapist, and reviewed her records and opinions before completing the assessment (R. at 887, 910).

The ALJ gave more weight to the opinions of Dr. Witt.  The ALJ gave some weight to the opinions of Dr. Liebenau, a consultant, but discounted his opinion that she would have difficulty maintaining employment (R. at 423).  The ALJ gave limited weight to the opinion of Dr. Porter and some weight to the opinions of Ms. Miller, a treating therapist (R. at 422-423).  The ALJ also gave some weight to the opinions of Dr. Adams and Dr. Cohen, who also prepared a state agency mental RFC assessment (R. at 423).

The ALJ gave specific, legitimate reasons for the relative weight assigned to the various medical opinions regarding plaintiff's mental limitations.  Dr. Witt provided a detailed narrative explanation in support of his opinions, and reviewed the treatment records and opinions of plaintiff's therapist, Ms. Miller, and even contacted Ms. Miller for clarification about the plaintiff.  The court will not reweigh the evidence.  The court finds that substantial evidence supports the ALJ's mental RFC findings.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 2nd day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge